## Castleman *vs* O. & I. Belt.

ERROR TO THE FRANKLIN CIRCUIT.

*Mortgagor and mortgagee.   Sub-tenant.   Rent.   Purchaser.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

ASSUMPSIT.   2m 157
                   102  415

*Case* 60.

*December* 24.

The facts agreed.

DAVID CASTLEMAN (the plaintiff in error,) seeks the reversal of a judgment rendered against him on agreed facts, in an action of *assumpsit,* for use and occupation, brought by him against *Osburn Belt and Joseph Belt.*

The facts, as agreed, are substantially these: one *Bacon,* having mortgaged a house in Frankfort to *Castleman,* afterwards mortgaged it to one *Philips,* who brought a suit in chancery against *Bacon* and *Castleman* for foreclosure and sale, *Bacon,* by himself and tenant, having continued to retain the possession and enjoy the profits—a decree directing a sale, was made in September, 1838, in execution of which the house was sold at auction to Castleman in November succeeding, and a conveyance thereof was made to him in March, 1839—the defendants in error being then in possession as tenants of the mortgagor, under a renewed lease, made in October, 1838, for six months; *Castleman,* before the expiration of their said term, and after he purchased the house under the decree, applied to them to become his tenants and pay rent to him, but they refused to do so, alleging, as the reason of the refusal, the fact that they had given their obligation to *Bacon* for the rent, payable about the first of May, 1839; and, as the tenants in fact of *Bacon,* the *Belts* retained the use of the house until the expiration of the said term of six months, then surrendered the possession to *Castleman,* and were afterwards compelled, by suit, to pay to *Bacon* the stipulated rent.

Had the date of the lease been antecedent, instead of subsequent, to that of the mortgage to *Castleman;* he might have been entitled to the whole rent accruing or becoming due, after the legal title to the reversion had been vested in him; for a purchaser of the reversionary title of

A purchaser of the reversionary title of a landlord acquires a legal right to the reserved and subsequently accruing rent, as an inci-

CASTLEMAN
*vs*
O. & I. BELT.

dent to the reversion—so a mortgagee of the legal title to a reversion, is entitled to the same incidents as any other purchaser of the same interest, which may be enforced by action for use and occupation, if not paid before notice of the sale of the reversion.

a landlord, acquires a legal right to the reserved and subsequently accruing rent, as an incident to the reversion; and it has been often decided that, in this respect, a mortgagee of the legal title to a reversion, is entitled to the same incidental and resulting rights as any other purchaser of the same interest. This right to the rent reserved and becoming due after the date of the mortgage or other purchase of the legal reversion, may be enforced against the delinquent tenant, by an action for use and occupation, unless before notice of the transfer of the reversion, he shall have paid the rent to his original landlord.

No attornment is necessary for the purpose of perfecting such a right, when, as in this country, the perfect legal title passes by a conveyance effectuated by the statute of uses, and therefore, no livery of seisen is necessary: *Moss* vs *Gallimore, Douglas,* 279; *Birch* vs *Wright,* 1 *Term Rep.* 378, and *Lumley* vs *Hodgson,* 16 *East,* 99.

But there is, in this respect, an essential difference between a lease subsisting at the date of a mortgage, and therefore passing with the reversion, and a lease made by a mortgagor in possession subsequently to the execution of the mortgage.

Neither the mortgagor nor his sub-tenant, suffered to remain in possession, is liable for rent so long as suffered to enjoy the use as lessee from mortgagor.

As the mortgagor, permitted to remain in possession, is not accountable to the mortgagee for profits, so neither will the sub-tenant of such mortgagor be liable to the mortgagee for rent, as long as he shall have been suffered to enjoy the use *as a lessee* from the mortgagor; for so long the possession of such a tenant is, constructively, that of his landlord, and to his use, and the presumption is as strong that the sub-tenant was not possessed to the use of the mortgagee, as it could be that the *pedis possessio* of the mortgagor himself had not been to the use of the mortgagee, but to his own use, with the mortgagee's implied assent thereto. Consequently there is, so far as we know, no reported case in which it was ever adjudged that a mortgagee could, in virtue merely of any supposed privity of estate, maintain an action for use and occupation, against such a sub-tenant of his mortgagor, without any entry upon him, or notice to or express contract with

him: and it has been decided in New York, that no action could be maintained by a mortgagee against such a tenant in such a case: *M'Kircher* vs *Hawley*, 16 *Johnson's Rep*. 289.

Whether the mortgagor be in possession personally or representatively, the appropriate remedy of the mortgagee for obtaining a legal right to the profits, is by eviction or entry or other notice of his claim thereto, or by express contract therefor. Until such entry or demand, or eviction, actual or virtual, the law will not imply an assumpsit to pay him for the use and occupation, either by the mortgagor or the mortgagor's subsequent tenant, who had expressly agreed to pay rent to his lessor.

But, as purchaser under the decree, *Castleman* acquired the absolute title, and it may, therefore, be asked whether he has not purchased the mortgagor's equity, and thereby and as incident thereto, the rent since becoming due from the defendants as tenants. It has been decided that a purchaser of an equity of redemption does not, by such purchase, acquire, as an incident to that interest, a legal right to rent reserved by the vendor, and accruing after the purchase: *Kobb* vs *Carpenter*, 2 *Campb*. 13 *n*; *Lumley* vs *Hodgson*, *supra*. And if this be true, as we are disposed to think it is, (because the doctrine that rent goes with the reversion, is technical and applies only to the legal title,) then, if the purchase of the right of the mortgagee would not alone enable *Castleman* to maintain this action, for the entire rent which had been reserved by Bacon, the fact that the equity of redemption had been barred by decree, or even the fact (if it be admitted,) that he bought also the mortgagor's equity, cannot entitle him to rent for any occupancy prior to the date of the conveyance to him as absolute purchaser.

*A purchaser of an equity of redemption does not acquire, by such purchase, as an incident thereto, any legal right to rent reserved by the vendor and accruing after the purchase.*

Nor can the *lis pendens* or even the decree for a sale when the lease was made, essentially affect the case. The *lis pendens* only concludes any question by the defendants as to *Castleman's* perfect and absolute title to the house, as purchaser under the decree, and the mortgagor, after the decree for a sale, had as much implied authority to lease the house as he had before; because, as the mortgagee did not seek or even intimate a desire

A mortgagee purchasing under a decree foreclosing his mortgage, may, after the date of the decree, treat one in possession under the mortgagor, as tenant or trespasser, *and from the time of* demanding possession or obtaining a conveyance, is entitled to the accruing rents.

to obtain the possession, the presumption must be that he did not claim or desire to appropriate to himself the profits of the future use, but intended to rely on a foreclosure and sale alone.

But although neither-the antecedent mortgage nor subsequent sale and conveyance under the decree created any such retrospective privity between *Castleman* and the lessees of the mortgagor as would, *per se*, imply the relation of landlord and tenant, as betwenn those tenants and Castleman antecedently to the conveyance of the whole title to him under the decree; yet, nevertheless, they might have been treated by him, after the date of the deed, either as trespassers or as occupants, holding at his will and as his tenants so long as they afterwards continued to occupy with his implied permission. He might undoubtedly have evicted them in an action of ejectment, and then have maintained trespass for mesne profits, after the date of his deed, had that been the date of his demise. And we are of the opinion that he had a right to waive the trespass and sue in *assumpsit* for use and occupation, for the same intervening period: *Birch* vs *Wright* and *Lumley* vs *Hodgson, supra*.

As he had a perfect right to the possession, whenever he chose to demand the surrender of it by the mortgagor's tenants, their retention of possession after such demand, might be deemed to have been either under him or wrongful as to him; and, therefore, for the value of the use after demand, he might be entitled to maintain assumpsit, at his election, notwithstanding the subsequent payment to Bacon as lessor.

And we are of the opinion also, that, although he did not expressly demand a formal surrender to himself by the occupant, yet his notification to them to rent of him, was a sufficient announcement of his determination that they should no longer hold under or for the use of their lessor.

The notification to them may not, however, have been essential for any other purpose than that of securing his right to future profits, notwithstanding a subsequent payment therefor to the lessor, and which, if made without notice, might perhaps, have exonerated the tenants from

all liability. When *Castleman* obtained the absolute title, the mortgagor's entire interest ceased, and, therefore, the derivative interest of his tenants ceased also at the same time. For their occupancy afterwards, it was their duty to account to the only owner of the house, and he had a right to consider them as holding in the legal relation of his tenants, by implication. Consequently, as they had at least constructive notice of the conveyance to him as absolute purchaser, and actual notice of his intention to claim the future profits, he is entitled to rent from the date of that conveyance to that of the surrender of the house to him, and the law implied a promise to pay it to him, because the holding was, during that interval, under his exclusive title, and with his implied consent, as legal landlord.

As *Castleman* thus appears to be entitled to recover something, in this action, the judgment of the Circuit Court must be reversed, and the cause remanded.

*Owsley* for plaintiff; *Todd* for defendants.