CASE 66—DISTRESS WARRANT—DECEMBER 11.

# Hutsell, Etc. v. Deposit Bank of Paris.

### APPEAL FROM BOURBON CIRCUIT COURT.

1. DISTRESS WARRANT—PRACTICE.—The objection to a distress warrant that it was issued both against the tenant and the subtenant, and directed the levy to be made upon their property found in the county, instead of only the property of the subtenant found on the leased premises, that alone being subject to the levy, will not be regarded as material, as the warrant was only levied upon such property of the sub-tenants found on the premises.

2. LANDLORD AND TENANT—ASSIGNMENT OF RENT NOTE—DISTRESS WARRANT.—The assignee of a rent note, unless the lease or land also be included in the assignment, is not entitled to the right of distress in the absence of a statutory provision therefor.

3. STATUTORY CONSTRUCTION.—By the provision in section 2304 of the Kentucky Statutes that "if the owner or holder alien or assign his estate or term, or the rent thereafter to fall due thereon, his alienee, or assignee, may recover such rent," it was not intended to grant to the assignee of the mere chose in action the extraordinary remedy also of distress.

MCMILLAN & TALBOTT FOR APPELLANTS.

(Brief not in the record.)

MANN & ASHBROOK FOR APPELLEE.

1. The reasonable and fair construction of section 2301 of the Kentucky Statutes, providing that a landlord may upon filing affidavit, etc., have a distress warrant issued, is that either such landlord or any one to whom the rent may be owing may be entitled to the remedy.

2. But without regard to the construction of that section the right of such assignee to recover the rent by distress is specifically given by section 2304 of the Kentucky Statutes.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Mrs. Taylor leased to C. E. Wood her farm for the year ending March 1, 1896, for $1,300, and the tenant, with three others as sureties, executed a note for that amount, due

March 1, 1896, payable to Mrs. Taylor, and negotiable and
payable at the Agricultural Bank of Paris. Before maturity
Mrs. Taylor endorsed and assigned the note to Irwin Taylor,
who endorsed it to McClintock, who discounted it to the De-
posit Bank of Paris. In April, 1895, the tenant, with the
consent of Mrs. Taylor, sublet the farm—or rather assigned
the remainder of his term—to J. M. and J. W. Hutsell, ap-
pellants, for $1,800, for which they executed their note, with
surety, to Wood, who assigned the note to J. B. Wood, who
assigned it to the Agricultural Bank of Paris. The $1,300
note was not paid at maturity, and on April 11, 1896, the
appellee, the Deposit Bank, through its president, made affi-
davit before the police judge and procured a distress warrant
to be issued in favor of the bank against Wood, the tenant,
and J. W. and J. M. Hutsell, the subtenants. The warrant
was placed in the hands of the sheriff, who levied upon the
property of the appellants, who executed a bond, with sure-
ties, to discharge the levy. Motion was made by appellee
under section 654 of the Code for judgment upon the bond
against appellants, and defense was made upon the ground
of irregularity in issuing the distress warrant, and that the
distress warrant was in favor, not of the landlord, but of a
remote assignee of a negotiable note given for rent. These
defenses were presented both orally and by written answer
and amended answer.

The objection to the distress warrant was upon the ground
that it was issued both against the tenant and the subten-
ants, directing the levy to be made upon their property
found in the county, whereas only the property of the sub-
tenants found on the leased premises was subject to the

levy. Inasmuch as the warrant was not levied upon any of the property of the subtenants found elsewhere than on the leased premises, we do not regard this objection as material.

The other objection is that the relation of landlord and tenant did not exist between the Deposit Bank and the Hutsells. This presents a question now, we believe, for the first time presented for decision, whether the remedy by distress or landlord's attachment under sections 2301 and 2302, Kentucky Statutes, is available in favor of the assignee of a note given for rent, who is not the assignee of the reversion. It is noticeable that this summary, and frequently oppressive, remedy by distress is, by the terms of the statute, given to the landlord, the language used being: "The landlord may, before a justice of the peace, . . . by himself or agent, file an affidavit," etc. The language in the other section providing for an attachment for rent, while not quite so explicit, in our opinion means the same thing, the language being: "The person to whom the rent is owing, or his agent or attorney, may file an affidavit. . . ."

At common law the right to rent was incident to the reversion, and the remedy by distress for arrears of rent was lost by assignment of the reversion, either absolutely or by way of mortgage. 1 Woodfall's Landlord and Tenant, vol. 1, p. 421, 1 American edition). It became a mere chose in action. And so not until the statute of 32d Henry VIII. could executors or administrators distrain for arrears of rent incurred in the lifetime of the owner. (Ibid., page 427.)

By the same statute (32d Henry VIII.) was given the power of distress upon the lands out of which the rent is reserved, so long as they continue in the hands of him to

whom the rent is due, or of any person representing or claiming title through or under him by purchase, gift or descent; and it is argued that, as this part of the statute of Henry VIII. has not been copied into our statute, while the part of it giving the power of distress to a personal representative has been so copied, the remedy by distress does not follow even an assignment of the reversion. In this State, however, it has been held (Breeding v. Taylor, 13 B. Mon., 477) that, if a sale be made of land in possession of a tenant, the tenant—and all coming into possession under him—becomes the tenant of the vendee, and may not attorn his possession to a stranger. (Saunders v. Moore, 14 Bush, 97.)

It would seem, therefore, that in this State the remedy might be held to follow the reversion, after notice to the tenant of the alienation, and would undoubtedly do so after an attornment, as that would establish the relationship of landlord and tenant. This question, however, is not before the court.

In Lawson's Rights, Remedies and Practice, volume 6, section 2819, it is said: "The requisites of a valid distress are, that there shall have been an actual demise or letting of the premises, and the relation of landlord and tenant exist between the parties; that there shall be a reversion in the landlord; that the rent be certain or capable of being made certain; and that the rent shall be due; and that there shall be a reservation of a certain rent."

And in Taylor's Landlord and Tenant (section 568), referring to the New York statute, in substance the same as the statute of 32d Henry VIII., it is said: "But in order to con-

fer upon such assignee a right to distrain the lease or land should be included in the assignment; for a mere transfer of the rent remaining unpaid, which is only the transfer of a chose in action, does not carry with it the remedy by distress."

We think it clear from the authorities that the right of distress does not pass to the assignee of a rent note in the absence of statutory provision therefor.

It is claimed that this statutory authority is contained in section 2304 of the Kentucky Statutes: "If the owner or holder alien or assign his estate or term, or the rent thereafter to fall due thereon, his alienee or assignee may recover such rent;" it being argued that the right given to alienee or assignee to recover the rent carries with it the right to the mode of recovery to which the assignor or alienor would have been entitled. It is to be observed that, in several instances, the statute upon this subject explicitly authorizes the remedy by distress; in section 2305, against the assignee or under-tenant of the lessee; in section 2318, against the tenant for life; in section 2319, to a person entitled to rents depending upon the life of another, after the death of the latter; in section 2321, to a personal representative, and in section 2324, to enforce the lien given under contracts by which the landlord is to receive a part of the crop. These express provisions indicate that, whatever might have been the legislative intent in the adoption of the statute embodied in section 2304, it was not thereby intended to grant to the assignee of a mere chose in action this extraordinary and frequently oppressive remedy. Moreover, section 2312 allows double damages for wrongful distress against the land-

lord, who, by reason of his ownership of the property, may generally be supposed to. be financially responsible. It is fair to presume that the reason no bond is required is because of this financial responsibility, the existence of which is not to be presumed in the assignee of the chose in action. Exactly what was the legislative intent in section 2304 is somewhat difficult of ascertainment. It may very well be considered that the statute was enacted to enable the assignee to sue for and recover the rent as rent, instead of being remitted to a recovery for use and occupation which seems to have been the common-law remedy in such case (Castleman v. Belt, 2 B. Mon., 157). But we are not disposed, by implication. to extend this harsh and summary remedy so as to make it applicable to a case to which it has never, so far as we are informed, been applied in this or any other country.

For the reasons given the judgment is reversed and the case remanded, with directions to set aside the judgment sustaining the demurrer to appellant's answer, and for further proceedings consistent with this opinion.