## Klein v. Auto Parcel Delivery Company.

(Decided October 21, 1921.)

### Appeal from Jefferson Circuit Court
(Common Pleas, First Division).

1. **Landlord and Tenant—Covenant to Renew or Extend Lease.—** While this court recognizes a technical distinction between a covenant to renew and a covenant to extend a lease, but whether a covenant is to renew or to extend depends upon the intention of the parties as shown by the entire lease and the interpretation thereof before a controversy arose, and the fact that it is called in the lease a privilege to renew is non-conclusive.

2. **Landlord and Tenant—Expiration of Tenancy.—**Sections 2295 and 2296 of the statutes relate especially to tenancies which by their terms expire on a day certain or which may expire on a certain day for failure to renew or extend where such right is given, and do not apply when the right exists and the privilege has been legally exercised.

3. **Landlord and Tenant—Renewal of Lease.—**In a lease for five years, beginning February 1, 1911, it was provided that "An option is hereby given to the second party (lessee) at the expiration of this lease to renew for a similar period of five years upon the same terms," except the amount of rent was increased, and after the expiration of the first period the occupancy was continued by the lessee for four years, he paying the increased rent which was accepted by the lessor without objection; Held, that the conduct of the parties was such as to show that it was their intention that the word "renew" in the original lease should be given the same meaning and have the same effect as the word "extend," there being nothing in the lease to the contrary, and the parties having thus construed their lease it will be given that effect by the court, and the unmolested occupancy, acquiesced in by the lessor, will be treated as a valid extension of the term for the second period provided for.

WILLIAM F. CLARKE for appellant.

BENJAMIN WASHER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to February 1, 1911, the appellant and defendant below, Sally S. Klein, by writing duly executed, leased to the appellee and defendant below, Auto Parcel Delivery Company, the real estate and improvements known as 518 Third avenue, Louisville, Kentucky, for a term of five years from and after the date mentioned. The rental provided in the lease was $100.00 per month for the first

three years of the term and $110.00 per month for its last two years.   It was further agreed that:

"An option is hereby given to the second party at the expiration of this lease to renew for a similar period of five years upon the same terms and conditions as herein set forth except that the rental for the first year of said renewal shall be at the rate of one hundred and ten ($110.00) dollars per month, and for the next four (4) years thereof at the rate of one hundred and twenty ($120.00) dollars per month.   Also additional five years at $120.00 one hundred and twenty dollars per month."

The lease nowhere requires notice by the lessee, written or otherwise, of his intention to exercise the option to renew upon the terms therein provided.   Possession was taken and the lessee occupied the premises throughout the first five year period, and continued to do so without objection, or threat of molestation from the lessor, for the first four years of the second five year period, during which time plaintiff accepted the rentals as provided in the option for the renewal period; i. e., $110.00 per month for the first renewal year and $120.00 per month for the following three years.

On January 19, 1920 (twelve days before the expiration of the fourth year of the second five year period) plaintiff served notice on defendant requesting a surrender of the property on February 1, thereafter, unless he would agree to pay rent in the future at the rate of $175.00 per month and not for a longer period that one year and it to be secured to the satisfaction of the plaintiff. Defendant declined to vacate the premises, as required by the notice, or to pay the increased rentals requested, or to do anything more than occupy them at a rental of $120.00 per month, as he had done since February 1, 1917.

This forcible detainer proceeding was thereafter instituted before the county judge of Jefferson county and at the trial there was a judgment finding defendant guilty of the forcible detainer complained of, which judgment was traversed, and an appeal was prosecuted to the Jefferson circuit court.   In that court the parties waived a jury and submitted the case to the judge thereof upon an agreed statement of facts, which was in substance as stated above, and judgment was rendered therein finding the defendant not guilty of the forcible detainer and the proceeding was dismissed, to reverse which plaintiff prosecutes this appeal.

The sole question for determination is the construction to be given the above quoted clause from the lease contract providing for an option to renew the lease "for a similar period of five years" upon the terms and conditions therein stated, which terms and conditions affected only the amount of rent to be paid, and which, as we have seen, was paid and accepted for the first four years of the renewal period.

It will be observed that the quoted terms of the lease confers upon the lessee an option "to renew" it for a similar period of five years, and that they do not, in express terms, give him an option or privilege "to extend" the original term for a similar period on payment of the additional stipulated rent; and the old and much mooted question as to the effect of a holding over by the tenant and the acceptance of the rent provided for the elongated period upon a lease containing a stipulation for its renewal, is again presented. A technical difference is recognized by many of the courts between the effect of a stipulation for the "renewal" of a lease and one for its "extension," while others treat them as practically the same in legal effect. 24 Cyc. 1018-19, and 16 R. C. L. 895. The courts which recognize the distinction generally hold that where a *renewal* is provided for a new lease should be executed, or at any rate the lessee should do everything required of him to procure the execution of a new one, in which case the failure and refusal of the landlord to execute it would perhaps work an estoppel against him; and the same courts hold generally that a holding over by the lessee is a sufficient exercise of his option or privilege "to extend." In other words the courts, which so hold, say that in the one case a new lease must be executed, or its execution legally excused, and in the other one no re-execution of the lease is required. 16 R. L. C. 894-895; Kozy Theatre Co. v. Love, 191 Ky. 595; Gault v. Carpenter, 187 Ky. 25; Hunt v. McChord, 179 Ky. 1; Mullins v. Nordlow, 170 Ky. 169; Miller v. Albany Lodge, 168 Ky. 755; Grant v. Collins, 157 Ky. 36; Ky. Lumber Co. v. Newell & Co., 32 Ky. L. R. 396; Brown v. Samuels, 24 Ky. L. R. 1216, and Elliott on Contracts, 1913 edition, volume 5, section 4557.

Of course, if the lease prescribes a condition precedent to the exercise of the privilege by the lessee, such as the giving of notice within a specified time before the expiration of the first term, such condition must be complied with, or it must be waived by the lessor, whether the priv-

ilege be one "to renew" or "to extend" the original
term.  Of the courts recognizing the distinction between
a privilege "to renew" and one "to extend" many of
them, including this one, as will be seen from the cases
*supra,* hold that the technical difference may be controlled
by the intention of the parties as manifested by something
appearing in the lease, or by their conduct before the
controversy arose, and that the privilege may thus be
construed as one to *extend* the term although the lan-
guage employed is one "to renew" it.  Thus, in the Kozy
Theatre case, it is said:

"This court uniformly has recognized a technical dis-
tinction between a covenant to renew and a covenant to
extend a lease, but has been just as consistent in holding
that whether the privilege is to renew or extend depends
upon the intention of the parties as shown by the entire
lease and their interpretation thereof before the con-
troversy arose, and that the mere fact it is called a priv-
ilege to renew is not conclusive."

In the Kentucky Lumber Company case referred to
the facts were almost, and in legal contemplation were,
identical with the facts in this case, and the court held that
the continued occupancy by the lessee and the acceptance
by the lessor of the stipulated rent at the times agreed
upon were sufficient in themselves to warrant an interpre-
tation that it was the intention of the parties for only an
extension of the lease although, as expressed in the lease
itself, it was a "privilege of a renewal from year to
year."  In the course of the opinion it is said:

"But if their (parties) intention was that the lessee
should have the right to retain the premises after the
expiration of the original term, but upon the same terms
of payment, and so forth, without the necessity of enter-
ing into a new lease, then of course the matter should be
allowed to go that way.  The office of judicial construc-
tion is simply to arrive at and effectuate the original in-
tention of the parties as evidenced by their document."

After defining the word "renew" as etymologically
contemplating more "than passivity in suffering a state
to continue as it was," the opinion held that the occu-
pancy of the lessee and the acceptance of the rents by the
lessor was more than passively suffering a state to con-
tinue as it was, and said:

"In the instant case, if the lessors had contended at
the beginning of the year April 11, 1901, that a renewal
of the lease, instead of its extension, was demanded by

the lease, and had held out then for such a construction, doubtless the lessor would have complied, as the only difference consisted in reducing the matter to writing again instead of standing upon the original writing. But by their acquiescence in the other construction, that is that the terms merely meant an extension of the original term for another year at the lessee's option, and without further act than the payment of the rent, the lessors led the lessee into relying upon that construction as the correct one. They ought not now be heard to say the contrary.''

But it is strenuously insisted that this case should be governed by the doctrine of the Grant v. Collins case, referred to, where the lease contained a privilege to renew and where there was a holding over by the lessor from September 1, 1911, when the original term expired, until May 1, 1912, at which time the lessee vacated the property. The landlord sought to hold him responsible for the entire renewal period provided for, but it was held that the plaintiff was not entitled to succeed because there was ''enough in the lease'' to show that the parties actualy intended and contemplated the execution of a renewal lease, since the lease said: ''Should the lessee continue to occupy the premises after the expiration of said term, or after a forfeiture incurred whether with or against the consent of the lessor, such tenancy may be terminated at any time at the option of the lessor.'' As will be seen it was therein agreed what should be the effect of a continued occupancy of the premises by the lessee, whether with or against the consent of the lessor, which was that the latter was given the right, under such circumstances, to terminate the extended tenancy at his option.

We would again call attention to the fact that leases like the one under consideration must not be confused with those providing for the giving of notice, nor should they be governed by the rules applicable to a holding over after the expiration of a term in which the lease does not provide for either its renewal or extension, but which terminates by its own terms at the expiration of the period covered by it. It is to the latter class of leases that sections 2295 and 2296 especially apply, since they operate only upon leases which by their terms have expired or where there has been a failure to take advantage to extend the term according to the method provided therefor in the lease itself.

Neither does the extended term when it is entered upon, according to the intention of the parties in providing for it, come within the statute of frauds requiring certain character of leases to be in writing and signed by the party to be charged, since the demise in such cases dates from the time of executing the original lease and the extended occupancy is under its terms. (Kentucky Lumber Company case, *supra*).

It is further insisted that the guarantor for the lessee who signed the original lease in this case is not bound for the extended term and that the lease was not, therefore, renewed as the parties contemplated. If is should be conceded that the continued obligation of the guarantor was essential to the renewal of the lease, as contemplated by the parties, (a question which we do not determine) we are of the opinion that the guaranty continues for the additional term. 16 R. C. L. 885.

The lease involved was entered into by plaintiff as "party of the first part," by defendant as "party of the second part" and by Charles New, the guarantor, as "party of the third part," and in the body thereof it is said: "In consideration of the leasing of the premises herein described to the second party the party of the third part do (does) hereby undertake and bind themselves (himself) that the party of the second part will pay the rentals and perform all its obligations of this lease."

A similar question was involved in the case of Webb v. Bailey, 17 Ky. L. R. 1117, wherein the surety or guarantor was sought to be held liable for rent accruing after the expiration of the original term and in holding him liable the court said: "We think the writing not only obligates the surety to pay the rent accruing during the term of three years, but requires him to pay for the occupancy after the expiration thereof; and, although it might be occupied only a part of a year, still he should pay for such time at the *rate* of $1,650.00 per annum," which was the stipulated rent in the original lease.

In accordance with the above principles we are clearly of the opinion that the conduct of the parties in this case, before any controversy arose (the occupancy of the lessee and the acceptance of the increased rent by the lessor, which was more than *passivity* on her part), for four years after the expiration of the original term, in strict compliance with the provisions for the renewed term, fully demonstrate that the parties intended to and did

use the word "renew" as synonymous with the word "extend," and that the circuit court was right when it held defendant not guilty upon the trial of the traverse.

Wherefore, the judgment is affirmed.