## Weber et al. v. C & C Dry Goods Company.

(Decided Feb. 20, 1934.)

440

BENTON, BENTON, SMITH & LUEDEKE for appellants.
BLAINE McLAUGHLIN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On September 10, 1928, Martha C. Chalk and Emma Cooper, partners, doing business in the name of C & C Dry Goods Company, rented a store room and cellar from Frank Beetz located on the corner of Fort Thomas and Lumley avenues in the Town of Fort Thomas, Ky., for a period of two years, beginning October 1, 1928, and ending September 30, 1930, with the privilege of five more years at $50 per month, payable monthly. That part of the lease contract pertinent to the issues herein reads as follows:

"That Frank Beetz hereby lease to the C & C Dry Goods Company the premises situated in the City of Ft. Thomas, in the County of Campbell and State of Kentucky, described as follows:

"Store and cellar at Lumley and North Fort Thomas avenue with the appurtenances thereto, for the term of two years commencing October 1st, 1928, at a rental of Five Hundred [$500.00] Dollars a year, payable every six [6] months in advance, with the privilege of five more years at Fifty Dollars [$50.00] per month, payable monthly."

On November 6, 1928, the partnership between Chalk and Cooper was dissolved and Miss Chalk continued to operate the business in its original partnership name. Shortly after the partnership was dissolved, Miss Chalk asked Mr. Beetz, the lessor, to lease the property to her individually, but Mr. Beetz declined to do so and no new lease was ever made. Appellee remained in the property throughout the term of the original lease from October 1, 1928, to September 30, 1930, and paid the stipulated rental of $500 a year.

After the termination of the original two years' lease ending September 30, 1930, without any further conversation or contract, Miss Chalk, the appellee, remained in the property and paid rent to Mr. Beetz at the rate of $50 per month as stipulated in the five-year option or "privilege" clause of the lease, and continued to do so throughout the rental year from October 1, 1930, to October 1, 1931, and under the same conditions, she entered the second year and remained therein, paying the same rentals until April 27, 1932.

Some time during the month of September, 1931, Mr. Beetz, with the consent of appellee, stored some fixtures in the basement of the leased premises, but it is not shown that this was intended to terminate or modify the lease contract. In April, 1932, appellee asked Beetz to make a reduction in the rent. Beetz told her that he had a prospective purchaser for the property and could not consider a reduction until the negotiations with the prospective purchaser were completed. About April 15, Beetz took Mrs. Weber, the appellant, into the store of appellee and introduced her to appellee and made some remark to the effect that Mrs. Weber was her (meaning Miss Chalk's) new landlady, and appellee said, "Then I don't bother you any more about the rent, I bother

her." Mrs. Weber was then looking at the property with a view of purchasing same. The question of rent was briefly discussed between Mr. Beetz, Mrs. Weber, and the appellee; but the matter was left open without reaching any definite conclusions.

On the night of April 27, 1932, appellee moved and vacated the premises without giving notice to any one. It appears that the sale of the property from Beetz to the Webers, appellants, had been agreed on before appellee vacated the property, but the deed was not executed until May 11, 1932, at which time the property had been vacated by appellee about two weeks previous. The premises remained vacant from April 27, 1932, to October 10, 1932, at which latter date appellants rented the property to another tenant.

Appellants then instituted this suit in the Campbell circuit court to recover of appellee under the lease contract of $50 a month for the 4 2/3 months the property was vacant, and prayed judgment in the sum of $233.

Plaintiffs base their suit on the theory that appellee's occupancy of the property under the contract from October 1, 1931, to April, 1932, more than three months after the beginning of the rental year, she thereby became bound to her lessor, Beetz, for the rental year ending October 1, 1932, and when appellants purchased the property they then succeeded to and became vested with all the legal rights of their grantor, Beetz, and appellee became their tenant and was bound to them for the rents the same as she would have been bound to Beetz, had he not conveyed the property. Appellee admits that after the expiration of the original two-year period of the lease, she continued to occupy the premises until April 27, 1932, but denies that such occupancy was under the terms of the lease, but avers that the same was a month to month tenancy and she had the right to vacate the property at the end of any month.

The evidence taken for the respective parties is but slightly, if at all, contradictory. The facts as above stated are supported by the evidence.

By agreement of parties a jury was waived. The case was submitted to the chancellor on the law and facts, and the chancellor upon consideration found for the defendant below, appellee herein, and dismissed appellants' petition, and from that judgment this appeal is prayed.

The questions to be determined herein are: (a) The nature of appellee's tenancy after the expiration of the original two year lease; (b) appellants' right to recover rents from appellee by reason of her contract with Beetz, their grantor, and their subsequent purchase of the property.

It is stipulated in the record that appellee immediately informed Beetz of the dissolution of the partnership and asked him to lease the premises to her individually and that Beetz refused to do so. It is insisted that these facts establish conclusively that Beetz did not treat appellee's tenancy of the property except as one from month to month, because he did not give her a new lease on the premises as requested by her. We cannot see any merit in this contention. The fact that he refused to release her from the original partnership contract by giving her a new lease is conclusive that the original lease remained in force and her tenancy remained under it. The dissolution of the partnership did not affect the partnership contract so far as appellee is concerned. A partnership contract binds the partners individually as well as collectively, and appellee having purchased the interest of her partner, she thereby succeeded to all the rights, assets, and liabilities of the partnership. This rule is fundamental and too well known to the legal profession to require citation of authority.

Next it is insisted that Beetz had reduced the rents to $40 a month before she left the premises, and this contention is based upon their negotiations looking to a probable reduction in the rents. But no new contract materialized and the original written contract was in force when she vacated the property.

It is further argued for appellee that if she was not a tenant by the month, she was only bound as a tenant from year to year because she held over more than 90 days after the beginning of the rental year, under the provisions of section 2295, Kentucky Statutes, and in that event she would be liable only under the rental price of $500 a year as provided in the original two-year lease, and on this basis 4 2/3 months' rent, sued for by appellants, would be less than $200, the minimum amount authorizing this court to grant an appeal. This raises the question whether or not she was a mere holdover tenant under the provisions of the original two-

year lease or a tenant under the five-year optional part of the lease at $50 per month. The case of Klein v. Auto Parcel Delivery Co., 192 Ky. 583, 234 S. W. 213, 214, involved the construction of a lease similar to the one in the instant case. In that case the lease was for a term of five years and stipulated a rental of $100 per month for the first three years of the term and $110 per month for its last two years. It was further agreed that:

"An option is hereby given to the second party at the expiration of this lease to renew for a similar period of five years upon the same terms and conditions as herein set forth except that the rental for the first year of said renewal shall be at the rate of one hundred and ten [$110.00] dollars per month and for the next four [4] years thereof at the rate of one hundred and twenty [$120.00] dollars per month. Also additional five years at one hundred and twenty [$120] dollars per month."

The lessee took possession of the leased property and occupied it throughout the first five-year period and without any further contract and arrangements continued to occupy it for the first four years of the second five-year period, during which time the lessor accepted the rentals as provided in the option for the renewal period, $110 per month for the first renewal year and $120 per month for the following three years. On January 19, 1920 (12 days before the expiration of the fourth year of the second five-year period), the lessor served notice on the lessee requesting a surrender of the property on February 1st, thereafter, unless the lessee would agree to pay rent in the future at the rate of $175 per month and not for a longer period than one year and it to be secured to the satisfaction of the lessor. The lessee declined to vacate the premises or to pay the increase rentals requested, or to do anything more than occupy the premises at a rental of $120 per month according to the lease contract.

The lessor instituted forcible detainer proceedings against lessee to require him to vacate the property. The litigation terminated in this court, wherein it was held that the conduct of the parties was such as to show that it was their intention that the word "renewal" in the original lease should be given the same meaning and have the same effect as the word "extend," there being

nothing in the lease to the contrary, and the parties having thus construed their lease it will be given that effect by the court, and the unmolested occupancy, acquiesced in by the lessor, *will be treated as a valid extension of the term for the second period provided for.* (Italics ours.) See, also, Miller v. Albany Lodge No. 206, F. & A. M., 168 Ky. 755, 182 S. W. 936; Wieck v. Glindmeyer, 229 Ky. 28, 16 S. W. (2d) 487.

In the case at bar the lease provides that at the expiration of the original two-year lease, the lessee had the "privilege of five more years at $50.00 per month, payable monthly." The fact that the rents were to be paid monthly does not mean that appellee was a tenant by the month. It only relates to the time and manner of paying the rents. She had the privilege under the contract to vacate the premises at the end of the original two-year lease or to accept its terms for a further period of five years. Nor could we construe the language used to mean one or more years not exceeding five years, thereby constituting a year to year tenancy. The office of judicial construction is simply to arrive at and effectuate the original intention of the parties as evidenced by their documents and conduct.

Leases like the one under consideration must not be confused with those providing for the giving of notice, nor should they be governed by the rules applicable to a holding after an expiration of a term in which the lease does not provide for either its renewal or extension, but which terminates by its own terms at the expiration of the period covered by it, which latter class of leases are governed by the provisions of sections 2295 and 2296, Kentucky Statutes. Such leases as are under consideration herein are not governed by the Statutes, supra, but involve only the construction of the contract. At the expiration of the initial two years which provided for a rental of $500 per year, appellee remained in the possession and occupancy of the property and paid the lessor $50 per month rental as provided under the five-year "privilege" or option, and continued to do so throughout the first year of the five-year period and 7 months of the second year. In view of the language used in the lease contract, and the conduct of the parties, measured to the authorities herein cited, the conclusion is inescapable that appellee was bound to her lessor for a period of five years. Thus it necessarily follows that appellee's tenancy was under the five-year

provision of the lease at $50 per month for which she was responsible to Beetz, appellant's grantor.

We now come to a consideration of the question of appellee's liability to appellants under her contract with Beetz. It is argued that there was no privity of contract between appellee and appellants. But it must be remembered that the action is not based upon privity of contract alone, but rather privity of estate. At common law a lease was not assignable so as to invest the assignee with the legal title to the rent. A tenant owed neither fealty nor rent to the assignee until he had assented to the assignment by attorning to the purchaser. To remedy this inconvenient principle of the common law, a statute (an ancient English statute) was passed which made assignments of reversions valid in all cases without attornment. This statute has virtually become a part of the American common law in the absence of local statutory enactment on the subject. But aside from the general rule and authority above stated, we have a Kentucky statute, section 2304, which reads as follows:

"If the owner or holder alien or assign his estate or term, or the rent thereafter to fall due thereon, his alienee or assignee may recover such rent."

The above-quoted section of our statute has been construed many times by this court dealing with questions similar to the one in the instant case. But even before the enactment of these statutes, the principles thereof were followed by this court as far back as the case of Williamson's Adm'x v. Richardsons, 6 T. B. Mon. (22 Ky.) 596, decided by this court in 1828, and this doctrine has been consistently adhered to down to the late case of Bowling v. Garber, 250 Ky. 137, 61 S. W. (2d) 1102, decided by this court in 1933, in which line of decisions it has been consistently held that a conveyance of a reversion transfers the entire interest in a leasehold including unaccrued rents, for which the assignee or grantee may recover of his vendor's lessee, who becomes the tenant of such assignee or vendee by virtue of such conveyance or assignment. Bowling v. Garber, supra; Williamson's Adm'x v. Richardsons, supra; Epperson v. Blakemore, 2 Bush (65 Ky.) 241; Castleman v. Belt, 2 B. Mon. 157; Ventura Hotel Co. v. Pabst Brewing Co., 109 S. W. 354, 33 Ky. Law Rep. 149; Breeding v. Taylor, 13 B. Mon. 477.

A covenant to pay an agreed rent is a covenant which runs with the land and binds both the lessee and the grantee of the reversionary interest, which the grantee or assignee may enforce against the lessee, for the simple and fundamental reason that the grantee by his purchase is vested with all the legal rights and remedies as would have been available to his grantor as against the lessee. Riley v. Louisville, L. & C. R. Co., 6 Ky. Op. 183; 35 C. J. sec. 444, p. 1215.

The further argument is made for appellee that at the time appellants obtained their title to the property appellee was not occupying the property and had vacated same several days prior thereto. But it must be remembered that the breach of the lease covenant does not lie in the failure to occupy the property, but in the failure to pay the rents as therein stipulated, and there was no breach of the covenant until appellee refused to pay the rent. If appellee was bound to her lessor, Beetz, for the rents (and we have concluded that she was), it follows then that she is likewise bound to his grantee, and they have the same rights and remedies as were available to their grantor.

In view of what has been said, it is our conclusion that appellee is responsible to appellant for the rents sued for, and the chancellor erred in failing to so adjudge.

The motion for an appeal is sustained, the appeal granted, and the judgment reversed and remanded for proceedings consistent herewith.