# DECISIONS

### OF THE

# Court of Appeals of Kentucky

## WINTER TERM, 1918.

### Hunt v. McCord.

(Decided January 29, 1918).

### Appeal from Meade Circuit Court.

1. Landlord and Tenant—Contract of Lease—Improvements.—Where a lessor agreed in the lease to pay to the lessee a stipulated sum for improvements at the expiration of the lease, and the premises are afterwards mortgaged by the lessor and sold at a decretal sale under a judgment rendered in a suit to foreclose the mortgage, the judgment not mentioning the item for improvements but purporting to sell the entire property, the purchaser will obtain a title unencumbered with the amount agreed to be paid by the lessor whose obligation to pay the amount is not discharged by a sale of the property, and this result is not affected by the fact that the lessee purchased the property.

2. Landlord and Tenant—Improvements.—Where the lease provided that the lessor should pay a stipulated amount for improvements made by the lessee at the expiration of the lease which contained a privilege to the lessee of extending the lease for a definite time, which privilege was exercised not by the execution of a new lease but by continuing to occupy—Held that the sum agreed to be paid for the improvements did not mature or become due until the expiration of the extended period of the lease under the clause giving that privilege, as this was but a continuation of the demise and not the entering into a new lease contract.

DAVID R. CASTLEMAN and PRYOR & CASTLEMAN for appellant.

J. M. RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

On May 1, 1912, appellant Hunt (defendant below)' and one Bridgeford were the joint owners in fee of several tracts of land in Meade county, Kentucky. One of the tracts containing five hundred acres was known as the "Grahamton mills tract," which included a mill site at which a cotton mill factory was located. On the day and date above Bridgeford and the defendant leased the Grahamton mill tract, including the mill thereon in its then condition, to appellee (plaintiff below) "for three (3) years, with the privilege of two (2) years longer," the rental being $100.00 per month, one half of which to be paid to each of the lessors. In the lease there was this agreement on the part of the lessors: "Second: At the expiration of this lease G. R. Hunt and J. R. Bridgeford agree to pay to McCord Company one-half of the cost of engine boiler and boiler house which cost five-thousand one hundred and fifty-one dollars and thirty cents ($5,151.30), making their one-half two thousand and five hundred and seventy-five dollars and sixty-five cents ($2,575.65) this amount to be paid in cash."

On November 18, 1913, defendant executed his promissory note to plaintiff, agreeing to pay him on May 1, 1915, the sum of $3,650.00, and to secure it the defendant and his wife executed a mortgage on the one-half undivided interest of the defendant in and to all of the Meade county land, including the Grahamton mill tract. After the note became due, Bridgeford sold his one-half undivided interest in all the Meade county land to one Hubbard, who in turn sold it to plaintiff, whereby he became a joint owner of one-half of the land with the defendant owning the other half. In the meantime Bridgeford and the defendant had neglected to pay the taxes assessed against the land and for several years it was sold by the sheriff of Meade county under a levy made upon it to collect the taxes, and at the sales the plaintiff became the purchaser, and for at least some of those sales the sheriff in due time executed to plaintiff a deed, after, as it is insisted, fully complying with the law in regard to such matters. This suit was filed on December 27, 1915, seeking the collection of the note before mentioned and an enforcement of the mortgage lien upon the land, as well as a lien for the defendant's portion of the taxes which plaintiff had paid. During the progress of the cause taxes for other years accrued, which were likewise paid by the plaintiff, by him purchasing

the property in the same way and he amended his petition so as to include those items. After the mortgage to plaintiff had been executed, defendant and wife executed another one to E. H. Morgan for the sum of $1,-800,00, and before the order of sale, he, by appropriate pleadings, was brought into the case and asserted his lien.

A number of matters are relied upon by defendant and his wife in their defense, the chief of which was that defendant had not received his proportion of rents under the lease to which he was entitled. It was also insisted by defendant that the lands could not be divided without materially impairing their value, and since plaintiff had become a joint owner a sale of the land in its entirety was insisted upon by defendant. With the condition of the accounts between plaintiff and defendant unsettled and undetermined, and by agreement of parties, the court at its April, 1916, term ordered a sale of all of the property for the two purposes of division and the enforcement of the liens upon defendant's one-half. In due time the land was sold by the master commissioner as directed by the judgment, and the plaintiff became the purchaser at the price of $9,976.00, it having been appraised at $8,400.00. Bonds were executed for the purchase price and the sale was reported and confirmed without exceptions. After the sale plaintiff filed a pleading styled "An Amended Reply and Amended Petition" in which, among other things, he claimed the right to collect from defendant his proportion of the sum which Bridgeford and himself had agreed to pay under the second clause of the lease which we have hereinbefore quoted, and which sum so claimed to be due from the defendant was $1,287.82, being one-half of the amount which Bridgeford and defendant agreed to pay under the clause of the lease referred to, and it was alleged in that pleading that defendant's portion of the rent which he claimed had not been paid had been credited on that sum, which plaintiff asked the court to approve and to give him judgment for the balance due from defendant under the second clause of the lease.

The right of plaintiff to collect from defendant in this or any other manner the item of $1,287.82 was, in the court below and is here, strenuously resisted, upon the ground that it was a lien upon the land, (the lease having been acknowledged and recorded) and that plain-

tiff when he bought the land did so with that lien or encumbrance upon it, and his purchase was made subject thereto, and in that way it became extinguished; that to again require defendant to pay it would be exacting of him two payments of the same item, which, if true, is manifestly incorrect and will not be tolerated. All other disputed items except the one just mentioned were agreed upon, and a stipulation containing an agreement of facts was filed in the case and the cause was submitted for judgment adjusting the rights of the parties in and to the proceeds of sale, and the court rendered judgment charging defendant's one-half of the proceeds with the lease item of $1,287.82 and interest thereon from May 1, 1915, (which was the date of the expiration of the first three-year-term of the lease) and to this action of the court the defendant complains and by this appeal seeks its correction.

The briefs of counsel, while not so voluminous, contain a discussion of multiplied questions, many, and indeed the greater portion of which, according to our view, are not relevant to the question presented. We shall consider such of them as we think relate to a correct determination of the controversy, omitting those which we deem foreign thereto.

The argument of counsel for defendant is that the item of $1,287.82, with which defendant was charged in the judgment, is an agreement by the lessor to pay for improvements put upon the premises by the lessee and in law becomes a lien upon the premises, and that defendant at the time of his purchase had actual knowledge of such lien, to say nothing of constructive knowledge arising from the recording of the lease, and that his purchase was therefore "subject to" this alleged lien; that he took the property under his purchase burdened with that lien and he necessarily fixed his bid with that amount in contemplation, therefore correspondingly reduced his bid resulting in defendant's property discharging it, and to again require him to pay this it would constitute double payment. Another insistence is that if the first position be incorrect then the item complained of was not due at the time of the rendition of the judgment, which was on January 24, 1917, and would not be due until the first of May following, at which time the extension privilege of the lease for two years would expire, and the disputed item, if payable at all, would become due.

Conceding without determining that the item in question as between lessor and lessee became a lien upon land, the vital question remains, whether the sale was made subject to it, i. e., whether the purchaser bought the entire unencumbered title under the judgment, or whether he bought it to be reduced by the amount of the lien. At the beginning it will be well to notice that plaintiff's pleading before the rendition of the judgment of sale charged that all liens for which the land was liable were contained and set forth therein, and we do not find this statement anywhere denied by the defendant. So that it would appear that he was willing for the judgment of sale to be based upon such admitted allegation. But, however, this may be, true it is that the judgment purported to sell the entire tract of land wholly unencumbered, reserving only the right to determine the respective contentions of the parties in and to the defendant's one-half of the proceeds when collected. It is true that the commissioner in the advertisement of sale, and also in the report made of it, made this statement: "This property is under lease to McCord Company, and will be sold with a privilege to McCord Company of removing from the premises at the end of their term of lease all machinery owned by said McCord Company." But the judgment contained nothing to that effect, and there is nothing to show that the statement contributed in any wise to affect the bidding at the sale. Moreover, the statement does not show that the machinery referred to included any of the items for which defendant agreed to pay at the expiration of the lease. There were no exceptions to the report of sale because of irregularity in the advertisement of it, or for any other cause, and there is a total absence in the record of any complaint of or evidence to show that the land did not bring its full value for an unencumbered title. Even if it be accepted that a lien, whether it be equitable or contractual, existed upon the land to secure the payment of the item in question, it does not necessarily follow that the one who owed it is released because it could or should be realized out of the property in lien to secure it. The one out of whose property it might be thus satisfied, if the creditor himself, would still hold the personal obligation of his debtor to pay the amount; and if a stranger, he, under well-known equitable principles, would have a right to be subrogated to the rights

of the creditor as against the debtor. Suppose in this case a stranger to the lease contract had purchased the property at the decretal sale; could it be said that the personal obligation assumed by the defendant under his lease to his lessee (plaintiff) would thereby become discharged? We answer most assuredly not unless it could be shown that the purchase was made knowing that the item in question was to be assumed or taken into calculation of the price to be paid.

Plaintiff's counsel rely upon these cases from this court: Willis v. Terry, 15 Ky. Law Rep. 753; Holtzclaw v. Craynor, 114 S. W. R. 721, and Gray v. Cornwall, 95 Ky. 566, as sustaining his position that the purchase in this case was made subject to the lease item in controversy. Without encumbering this opinion with a recitation of the facts of those cases or a discussion of the legal principles announced in the opinions, it is sufficient to say that we do not find them applicable under the facts of this case. For instance, in the Terry case referred to the sale of the land was made by the sheriff under the levy of an execution, which levy was made subject to. a prior mortgage, and the sale was made with the same reservation. In the deed which the sheriff executed it was stated: "Less the one-fifteenth part of said undivided interest on which Laura Willis has a mortgage executed to her by Frank Willis on November 19, 1883, and of record in the Barren county clerk's office, book No. 12, page 314"; and the court adjudged that the purchaser bought the land encumbered with the mortgage debt, and to this extent he knowingly purchased an incomplete title and that the price was correspondingly fixed, saying: "Terry purchased this land at $90.87 in the year 1886, and subject to this mortgage, that was recognized by both himself and the sheriff as being a lien superior in date to that of the levy. . . The appellee (Terry) recognized it (mortgage) as existing and was entitled to no more than he purchased."

The opinion in that case announces a wholesome principle the application of which will be readily invoked by courts of equity in administering justice between litigants when the facts authorize it; but clearly, as we have seen, there is no room for such application under the facts of this case. Illustrating our position, suppose the land here sold under the decree of court had been purchased at a private sale, as was the interest

of defendant's joint owner, Bridgeford. The purchaser in that case would have at least constructive notice of the lease and its contents, including the alleged lien on the land in favor of the lessee, but surely, under no principle of equity or reasoning, could it be insisted that the vendor and lessor would thereby become discharged from his personal obligation to pay the stipulated amount fixed in the lease, and we find nothing in the record to differentiate the relative rights of the parties under the decretal sale from those which would accrue from a private sale. The confusion of counsel, in a measure at least, may be attributable to the fact that the lessee to whom the promise in the lease is made afterward purchased the premises and became in a sense his own lessor, but this merger of related positions to the contract cannot affect defendant's obligation to comply with the terms of his lease.

This brings us to the second contention, that the item which defendant is contesting was not due until May 1, 1917. This under adjudicated cases, as well as sound principles, is far more meritorious that the one just considered. In support of the contention we are referred to the cases from this court of Miller v. Albany Lodge, 168 Ky. 755; Brown v. Samuels, 24 Ky. Law. Rep. 1216, and Grant v. Collins, 157 Ky. 36. The doctrine of these cases is that there is a distinction in the law between a covenant in a lease to renew it and a provision therein conferring upon the lessee the privilege of extending his term. It is pointed out in those opinions that in the case of a covenant for renewal in order for the renewal to be effected some positive act on the part of the parties, such as notice by the lessee to the lessor, or an actual renewing of the lease, must occur; whereas, in cases giving the privilege of extension to the lessee no such positive act is essential, but a mere holding over by him is sufficient to continue the lease.

The position of this court upon this question is well stated in the following excerpt from the case of Brown v. Samuels, *supra*:

"It will be observed that by this instrument the premises were leased to Brown for ''the period of five years, with the privilege of five years more.' In the Amer. & Eng. Ency. of Law, volume 18, page 693, 2nd edition, it is said: 'A provision in a lease giving to the lessee the

privilege of extending the term is to be distinguished from a provision giving to the lessee the option to renew. In the former case no notice of the lessee's election to extend the term is required, in the absence of a stipulation therfor in his lease, his mere remaining in possession being sufficient notice.' (Wood on Landlord and Tenant, 678; Taylor on Landlord and Tenant, 278; Terstege v. First German Benevolent Society, 47 Amer. Rep. 135, and cases cited)

''The reason for this rule is that the additional time is not a new demise, but a continuation of the old one.''

The other cases referred to state the rule equally strong, and indeed there is but little if any dissent therefrom in any of the authorities. However, it is recognized that this rule of interpretation, as in other cases, is to be governed by the intention of the parties as gathered from the instrument, and notwithstanding the rule, if it should appear from the language employ d that the parties intended that a different effect should be given their lease contract, the courts will govern themselves accordingly. Ky. Lumber Co. v. Newell, 32 Ky. Law Rep. 336, and Grant v. Collins, supra. There is nothing in the lease here involved indicating any intention on the part of the parties thereto to take it out of the rule or that it should be construed otherwise than in accordance therewith. Neither are we convinced that the authorities relied upon by appellee's counsel conflict with the cases, supra. Chief among them is the one from 24 Cyc. 1021, to this effect: ''The taking of a new lease will not defeat a cause of action already accrued under the old lease, or destroy any right or privilege reserved to either party at the expiration of the original term, and the renewal lease executed in pursuance of the covenant to renew will not satisfy any of the covenants of the old lease, except the covenant to renew.''

In the first place the author of the work from which the quotation is made is treating of renewal under a covenant to renew contained in the old one, which, under the cases, supra, from this court is a new lease and not necessarily governed by stipulations in the old one. Again, the rule laid down in the quotation ''begs the question'' here involved because it assumes that the ''cause of action'' is one which ''accrued under the old lease,'' which assumption is the very question involved in this case. If, as stated in the opinion in the case of

Brown v. Samuels, *supra,* and adopted by this court in the other cases referred to, "the additional time is not a new demise, but a continuation of the old one," the term is extended for the additional time covered by the privilege, and the lease does not terminate until the expiration of that priod.  By the exercise of the privilege in this case the plaintiff pushed forward the expiration of the lease for a period of two years, making it one for five years instead of for three years.  In doing so he accepted the benefits of the use of the property accruing therefrom, and it is nothing but just, as well as in accord with well-known rules of law that he should likewise shoulder the burdens, and if one of these is that the maturity of -    claim in contest would thereby be postponed, he should be made to abide the result.   Moreover, it would seem that such consequences were necessarily within the contemplation of the parties, because there is nothing to indicate, and no insistence made to that effect, that the rent should be increased during the extended period, throughout which time the lessee could, and as a matter of fact did, use the articles for which he is now seeking pay.   Under such circumstances to hold that the exercise of the privilege would not affect the maturity of the claim would be out of harmony with the doctrine of the cases, *supra,* from this court, as well as principles of right and justice.   To do so would allow plaintiff to continue in the use of the property without additional rent, and at the same time its value would be lessened by the increased use during the extended period.

We are therefore constrained to hold that the item of $1,287.82 did not mature until May 1, 1917, which was after the rendition of the judgment.   It might have been proper for the court to charge the defendant with the amount and order it to be paid when it matured; but, however this may be, defendant should not have been charged with interest thereon for the two years intervening between May 1, 1915, and May 1, 1917, and to this extent the judgment is erroneous.

Wherefore, the judgment is reversed as to the errors pointed out, but in all other respects it is affirmed.   Upon a return of the case the state of accounts between plaintiff and defendant will be calculated as herein directed, and a judgment will be rendered in favor of plaintiff accordingly.