## Anderson et al. v. City of Lexington et al.

Jan. 15, 1946.

856

Earle Fowler and Jesse K. Lewis for appellants.

Robert Odear and William Minihan for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

J. Blythe Anderson and others, to whom we shall refer as the landlords, filed an action under the Declaratory Judgment Law, Civil Code of Practice, sec. 639a—1 et seq., against the City of Lexington, to which we shall refer as the City, seeking to have the rights of the parties under a contract between the landlords and the City declared by judgment of Fayette Circuit Court. The City filed its answer and cross-petition by which Lexington Flying Service, Incorporated, to which we shall refer as the Flying Service, was made a party defendant. From a judgment of Fayette Circuit Court overruling a general demurrer of the landlords to the City's answer and cross-petition, overruling a special demurrer of the Flying Service, denying any injunction to the landlords and declaring the City entitled to property which is the subject of the litigation, this appeal is prosecuted by the landlords.

The facts of this case appear to be that the landlords made a contract with the City in 1934 by which they leased to it a flying field and stipulated therein the City's right to remove any hangar or building or flying equipment at the lease's termination; that this lease was renewed from time to time until its final renewal in 1942

for the period ending December 31, 1942, which final renewal also stipulated about the City's right to remove hangars, structures and equipment within a reasonable time after the lease termination; that during the lease period the City placed a hangar, other structures and equipment thereon; that the City decided sometime in 1942 not to carry the lease beyond December 31, 1942, and thereupon the Flying Service decided to take over the field and to lease same from the landlords; that the Flying Service made a contract with the landlords on December 18, 1942, by which it leased the same field for one year from the landlords and likewise stipulated therein the Flying Service's right to remove "the hangars and other structures and equipment used in connection with said airport within a reasonable time after the termination of said lease"; that the City made a contract with the Flying Service on December 31, 1942, by which the City leased to the Flying Service the metal hangar building on the field for one year and stipulated therein the City's right to remove said hangar building, using these words for such stipulation:

"In the event the city should desire to use said building prior to the termination of this lease, then this lease may be ended and the city is privileged to remove said building from the premises after giving second party (the Flying Service) thirty days notice of such intention."

The above facts were substantially set out in the pleadings.

The record shows a renewal of the lease of the field from the landlords to the Flying Service but not any renewal of the lease of the hangar building from the City to the Flying Service, and this latter lease terminated according to its own terms on December 31, 1943. The City served notice on the Flying Service on June 30, 1945, of its intention to remove thirty days thereafter the hangar building in question from the flying field. There then followed this action by the landlords for an injunction against the City and for a declaration of rights under the lease contract between the landlords and the City in relation to ownership of the hangar building.

Some of the evidence introduced on this trial before the chancellor tended to indicate that the Flying Service

had a preliminary discussion with the City concerning its desire to take over the City's flying field lease before this was actually done; that the Flying Service was instructed by the City to negotiate a new lease with the landlords and to stipulate therein on the City's behalf a clause providing for removal of hangar and other structures from the field at the new lease termination; that the lease between the landlords and the Flying Service was then drawn and negotiated with a hangar removal clause therein and such lease was thereafter considered satisfactory to the City and to its proprietary interest in the field's hangar and structural equipment; that the hangar or building lease was then finally given to the Flying Service by the City as of December 31, 1942.

While the landlords deny that they had any knowledge that the hangar removal clause in their lease to the Flying Service was intended for the City's benefit or that they had any knowledge of the subsequent hangar or building lease from the City to the Flying Service, yet all the circumstances indicate the landlords' must have had some understanding that the hangar removal clause in the new lease from themselves to the Flying Service was intended to inure to the ultimate benefit of the City and to the protection of the City's investment in the hangar structure. And certainly the passage of a public ordinance by the City authorizing the hangar or building lease by the City to the Flying Service had the effect of putting the landlords on constructive notice in the early part of January, 1943, that the City had actually made or was about to make a hangar or building lease to the Flying Service and thereby set up a positive assertion of the City's ownership to the property in question.

If the landlords knew, as the circumstances seem to indicate, that the hangar removal clause in the new lease was for the City's benefit and if the landlords were charged with constructive notice of the City's assertion of its positive ownership in the hangar by reason of an ordinance authorizing the hangar or building lease to the Flying Service, then the landlords must have had some duty of asserting their own claim to the hangar instead of acquiescing in the two new lease arrangements throughout 1943, 1944 and half of 1945. One may be precluded from asserting a claim that, except for his

conduct, would be meritorious. In its practical effect that is often what an estoppel means. Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514.

Under the landlord-tenant holdover statute, the rights, including the right of hangar removal, of the parties in the new lease of December 18, 1942, continued from year to year until the time of the filing of this cause of action. In other words, it appears that there existed the same right to remove the hangar in June of 1945 as in December of 1942, either on behalf of the Flying Service or of the City as its contractual beneficiary, regardless of lease renewal. KRS 383.160.

As the chancellor indicated in his opinion rendered in this case, no one was hurt, misled or prejudiced by the City's failure to remove the hangar immediately upon the expiration of the old lease. On the contrary, the landlords were thereby enabled to gain a new tenant at the same rental, the Flying Service was enabled to operate a flying field and the City was enabled to keep intact its hangar, which everyone admits it had a right to remove under the old lease, on the landlords' field until such time as it might desire to set up a new municipal airport. It would be in violation of the contractual arrangements among these parties as well as a violation of equity principles to refuse the City the privilege of removing the hangar, which the City originally purchased and installed and which the landlords twice agreed by contract could be removed by tenants using the flying field.

No principle of equity jurisprudence appears to be more thoroughly established than the one that the Court of Appeals will not disturb a chancellor's ruling in a case wherein there is no more than a doubt as to the correctness of such ruling when it involves conflicting evidence. Out of a great number of authorities supporting this principle, we cite but one of recent origin, to wit, Steele v. Perry County, 299 Ky. 827, 187 S. W. 2d 302.

The chancellor considered the pleadings and then heard all the evidence, and from the record thus made, he then decided there was a contractual agreement in existence at the time of this litigation of sufficient force and validity to enable the City to remove its structual equipment from the landlords' field. We believe the

pleadings and part of the evidence give good support to that view.

For the reasons indicated, the decision of the chancellor must be and is upheld.

The judgment is affirmed.