LEXINGTON FLYING SERVICE, Inc. v.
ANDERSON'S EX'R et al.

Court of Appeals of Kentucky.
Jan. 30, 1951.

Rehearing Denied June 22, 1951.

Wm. L. Wallace, Jesse K. Lewis, Lexington, for appellant.

Harbison, Kessinger, Lisle & Bush, Lexington, for appellees.

MOREMEN, Justice.

On December 18, 1942, by an instrument styled Extension of Lease, James B. Anderson, individually and as agent for Joseph C. Anderson, Mary J. Anderson, and Alice S. Anderson, who herein will be called Lessors, leased to appellant, The Lexington Flying Service, a corporation, property known as Lexington Municipal Airport, for a term of one year. The terms of the lease gave to appellants:

(1) The right to renew the lease from year to year upon the same terms and conditions.

(2) The right to remove hangars and other structures and equipment within a reasonable time after the termination of the lease.

(3) An "option to purchase the property herein upon the same terms and conditions as stated in the Exhibit filed herewith, and marked 'Exhibit B' for identification."

This Exhibit B, which has been under the consideration of this court before, Anderson v. City of Lexington, 301 Ky. 855, 192 S.W.2d 361, is important to the decision in the instant case, and, in order to understand it, a statement of facts which surrounded its origin is required.

On May 4, 1934, the property here involved was leased by Lessors to the City of Lexington. On a day not shown to be certain, but in the same month of May,

1934, the parties entered into a supplemental agreement and, in the preamble of the instrument in reference to the lease of May 4, 1934, it was said: "Said lease being for a period of five (5) years with privilege to second party to renew said lease for an additional five year period, provided it notified first parties sixty (60) days prior to the expiration of the first five-year period, and with the further right and option to the second party at the end of five years, or any time prior thereto, to purchase said property for the sum of Three Hundred Dollars ($300.00) per acre."

This supplemental agreement, which was executed some time in May 1934, is the "Exhibit B," referred to in the Extension of Lease, dated December 18, 1942.

Under the terms of its lease, appellant, The Lexington Flying Service, entered into possession and use of the property on January 1, 1943.

On November 30, 1946, appellant notified Lessors of intention to exercise the option of purchase and made tender of the purchase price which was refused. Thereupon appellant filed a petition in the Fayette Circuit Court wherein it was alleged that Lessee had been in continuous possession of the property since January 1, 1943 under the terms of the lease which had been in force at all times, and prayed that Lessor be required to perform specifically the terms of the option to purchase. The trial court in a written opinion stated the parties had agreed that Lessee had continued to hold "the premises under this lease by virtue of three successive holdings over and paying rental and not by reason of any specific extension or renewal of the lease." A demurrer to the petition, as amended, was sustained, the appellant declined to plead further, and the petition, as amended, was dismissed.

The trial court, in a written opinion, based his action in sustaining the demurrer on the grounds:

(1) That the holding over each year after the initial one year term, for a period of ninety days, and the payment and acceptance of rent, gave appellant only the right to remain in possession of the premises another nine months, or until the expiration of one year from the day the term of tenancy expired, and that the hold over statute (KRS 383.160) gave to tenant a stay of proceedings, but gave no other right.

(2) That Exhibit "B" gave no option to purchase to appellant in this case, and was only executed for the purpose of carrying out a provision of the original agreement of lease which had been omitted by oversight, namely, the right of lessee to remove hangar, etc., at the end of the lease.

The first question presented to this court concerns whether the holding over for three successive years, with payment and acceptance of rent, extended all the terms of the original lease dated December 18, 1942, including the option to purchase. That lease contained this provision: "Said lease to extend for a period of one year, with the privilege to said second party to renew said lease from year to year upon the same terms and conditions as contained in this lease * * *."

It will be remarked that the lease confers upon Lessee the right to "renew" said lease from year to year and it does not, in express terms, confer the privilege to "extend" the original term on payment of rent. Some courts have recognized a technical distinction between the expressions, "to renew" and "to extend," and have held that the word "renew" connotes that a new, formal agreement in writing should be executed by the parties in order to conform to the definition of the word or, at least, some positive act other than a mere holding over beyond the fixed term must be taken, while the requirements of the definition of the word "extend" are satisfied by a holding over, accompanied by the payment and acceptance of rent, with the result that the force of the terms of the lease continue in effect for the extended term.

This court has recognized the fact that parties to the lease do not always select the exact words necessary to express their agreement, nor are they always aware of the strict, legal significance of the words used, and, in the case of Klein v. Auto

Parcel Delivery Co., 192 Ky. 583, 234 S.W. 213, 215, said: "Of the courts recognizing the distinction between a privilege 'to renew' and one 'to extend,' many of them, including this one, as will be seen from the cases supra, hold that the technical difference may be controlled by the intention of the parties as manifested by something appearing in the lease, or by their conduct before the controversy arose, and that the privilege may thus be construed as one to '*extend*' the term, although the language employed is one 'to renew' it."

■ A review of the decisions of this court will demonstrate that the word "renew" will not be given its strict legal interpretation, unless it is evident from some provision of the lease, or from the conduct of the parties that the word was not used as a synonym for the word "extend," and each case has been decided by the application of this rule to the particular facts presented by the conditions set forth in each lease and the conduct of the parties to the lease. In the case of Cain v. Lawrence Drug Co., 1930, 235 Ky. 12, 29 S.W.2d 550, 551, it was said: "In many cases of comparatively recent date this court has had before it the well-worn and much-handled question concerning the right of the parties to lengthen a lease for an additional stipulated period when the lessee was in express terms given the right 'to renew' or 'to extend' his first term. Some of the many of such recent cases are: Brown v. Samuels, 70 S.W. 1047, 24 Ky. Law Rep. 1216; Kentucky Lumber Co. v. Newell & Co., 105 S.W. 972, 32 Ky.Law Rep. 396; Grant v. Collins, 157 Ky. 36, 162 S.W. 539, Ann.Cas. 1915D, 249; Miller v. Albany Lodge, 168 Ky. 755, 182 S.W. 936; Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825; Hunt v. McCord, 179 Ky. 1, 200 S.W. 2; Gault v. Carpenter, 187 Ky. 25, 218 S.W. 254; Kozy Theatre Co. v. Love, 191 Ky. 595, 231 S.W. 249; Klein v. Auto Parcel Delivery Co., 192 Ky. 583, 234 S.W. 213; Edwards-Pickering Co. v. Rodes, 203 Ky. 95, 261 S.W. 884; Ingram v. Foster, 205 Ky. 57, 265 S.W. 434; Khourie Bros. v. Jonakin, 222 Ky. 277, 300 S.W. 612, and Wieck v. Glindmeyer, 229 Ky. 28, 16 S.W.2d 487. It would be a useless expense of time and space to analyze each of those cases or to insert the phraseology of the different leases containing the right to the extension as appeared in each of the involved ones, or to incorporate excerpts embodying the reasons actuating the court for the conclusions reached in them, since such matters can readily be obtained by consulting the opinions in each of those cases."

However, we believe it to be advisable to comment on the nature of the facts presented in the Kentucky cases cited by appellee.

In the case of Miller v. Albany Lodge No. 206, F. & A. M., 168 Ky. 755, 182 S.W. 936, 937, a lease at a fixed rental for one year, contained the provision "with option at same rate for five years". The tenant held over after the first year, which act was construed as an election to take for the extended term, and this court said: "In such a case the tenant is not only bound for the additional or extended term as fully and completely as though that term has been originally included in the lease when executed, but is entitled to remain and occupy the premises during the additional or extended term, even though the landlord should wish to oust him."

In the case of Ingram v. Foster and Roma Lane, 205 Ky. 57, 265 S.W. 434, the contract of lease used this language: "First party now gives the second party an option at the end of three years to lease said building for another term of three years." Before the original term of the lease had expired, lessee notified lessor in writing of the exercise of the option. It was held that this written notice of election had the effect of extending the term of the lease. The court was not called upon to determine what the effect of a holding over without notice would have been.

In the case of Cain v. Lawrence Drug Co., 235 Ky. 12, 29 S.W.2d 550, the lease contained this stipulation: "with the privilege of an additional 5 years, if so desired by the Drug Company." Assignees of the

original lessee continued occupancy and paid rent which was accepted. We said: "The privilege to elongate the contract for an additional period of five years was clearly the privilege of engaging in such continued occupancy. No other prescribed act as a requisite for putting into operation the extended period, such as the giving of notice, etc., was provided for in the contract and which leaves, as the only one necessary therefor, that the lessee should keep his seat in the occupied building, and which, if acquiesced in by the landlord, would be and constitute the performance of every requisite act contained in the contract for the extension of the lease."

In the case of Carter v. Frakes, 303 Ky. 244, 197 S.W.2d 436, it was not necessary in the opinion to state the exact wording of the lease in regard to a renewal of the term, but an examination of the record in that case has disclosed that the lease provided: "Said lessor hereby grants unto said lessee the option of renewing this lease for a further term of five years, * * * but it is stipulated that written notice of the intention of the lessee herein to assert said option shall be given by said lessee to lessor * * *."

This positive act of giving written notice was performed, and the requirements of the rule were therefore satisfied. The decision was based upon another point.

Likewise, in the case of Wieck v. Glindmeyer, 229 Ky. 28, 16 S.W.2d 487, the terms of the lease required that written notice be given.

■ The lease under consideration did not require that Lessee perform some positive or special act before its terms might be extended. It demanded no written notice of intention to exercise the privilege to extend its terms, and required no unique act on part of Lessee that must be performed as a condition precedent, or in the absence of the act, a waiver by Lessor. We, therefore, conclude that the instant case falls into that category of cases in which no positive act is required and that the holding over, with payment and acceptance of rent, is enough to vitalize the lease for the extended period.

We believe that the trial court's second reason for sustaining the demurrer is not well founded. It seems to us that the expression used in Exhibit "B," "and with the further right and option to the second party at the end of five years, or any time prior thereto, to purchase said property for the sum of Three Hundred Dollars ($300.00) per acre," when considered with the stipulation in the agreement of lease which granted to Lessee "an option to purchase the property herein upon the same terms and conditions as stated in the Exhibit filed herewith, and marked 'Exhibit B' for identification" is certain as to meaning. The only purpose for annexing "Exhibit B" was to supply (inter alia) the terms under which the option might be exercised.

Appellees insist that in no event was the purchase option extended beyond the original one year term of the lease, but this argument is based upon the faulty premise that the lease had not been extended and that the appellants were tenants only by reason of the hold over statute. The lease in the case of Carter v. Frakes, 303 Ky. 244, 197 S.W.2d 436, cited by appellees in support of their contention, as we have heretofore pointed out, required written notice in order to renew the lease. The lease agreement also gave lessee an option to purchase at any time up to June 2, 1942. On March 9, 1942, Lessee served a notice which read in part: "I am renewing this lease for the further period commencing June 4, 1942, and ending on the 4th day of June 1947, * * * and I further accept and ratify all the other terms of the said contract of lease."

The question, as stated in the opinion, was: Did it (the notice) sufficiently manifest an intention to renew the right of exercising the option to purchase after the date originally fixed. We held that where a lease contained both option to renew and option to purchase, the words used did not indicate an intent to renew the option to purchase, saying, "It is not difficult to conceive that what the Lessee had in mind when giving notice was a purpose to renew the lease. It avoids rather studiously any mention of the option. Had appellee in-

tended a renewal of the preferential right it would have been a simple matter to have inserted in the notice the words 'and the option to purchase.'" It must be borne in mind that the extension of the terms of the lease, in the instant case, was not dependent upon written notice.

The general rule concerning whether an option to purchase may be exercised during an extended term is stated in 51 C.J.S., Landlord & Tenant, § 84, as follows: "Where the lease confers the right to purchase at any time during the term, it is generally held that it may be exercised during an extended or renewed term, acquired under an option in the lease for an extension or renewal on the terms and conditions of the original lease."

In the 'Carter case, supra, we held that the provisions of such a contract were capable of being severed if it was plain that the parties intended that they should be divisible, and said: "The ordinary rule of non-severability of contracts of lease with option to purchase has been recognized, but as we have observed these cases, it appears that none of them had to do with contracts where the time to exercise the option to purchase was definitely fixed. This leads to the reasonable conclusion that considering the notice along with the lease, the writer did much to indicate severance or waiver. The fixing of the date lends force to the idea of severability." [303 Ky. 244, 197 S.W.2d 438.]

In the case at bar we find no condition of fact which indicates that the parties intended to extend the contract of lease as to tenure to the exclusion of the right given by the option of purchase, and believe that the holding over, payment and acceptance of rent was sufficient to continue all the terms of the contract. Simmerman v. Fort Hartford Coal Co., 310 Ky. 572, 585, 221 S.W.2d 442, 11 A.L.R.2d 381.

It was also argued in appellees' brief that there was not enough certainty in the option agreement to authorize a decree of specific performance, but we have failed to recognize any uncertainty in this option.

We have concluded that the demurrer to the petition should have been overruled and this case is, therefore, remanded for proceedings consistent with this opinion.

Judgment reversed.

SIMS, J., dissenting.

SIMS, Justice.

I dissent from the opinion of the majority, under the facts and circumstances presented by this record, because I cannot bring myself to believe this is a case where the chancellor should apply the extraordinary remedy of specific performance, which rests within his discretion to be exercised upon consideration of all the circumstances of the case.