RENDERED: MARCH 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0758-MR

THE FIRST NATIONAL BANK
OF MANCHESTER          APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM CLAY CIRCUIT COURT HONORABLE OSCAR G. HOUSE, JUDGE ACTION NO. 15-CI-00338 | |

MAURICE K. SMITH;
COMMONWEALTH OF KENTUCKY,
TRANSPORTATION CABINET,
DEPARTMENT OF HIGHWAYS;
DELBERT J. SMITH; JANET SMITH;
JOHNNY T. SMITH; LOLA DEANE
SMITH; SHELBY JEAN SMITH,
INDIVIDUALLY; SHELBY JEAN
SMITH AS TRUSTEE OF THE TRUST
AGREEMENT OF CLIFFORD M.
SMITH; AND VICKIE SMITH          APPELLEES

AND

NO. 2020-CA-0759-MR

THE FIRST NATIONAL BANK
OF MANCHESTER          APPELLANT

v.                    HONORABLE OSCAR G. HOUSE, JUDGE
ACTION NO. 17-CI-00236


MAURICE K. SMITH; DELBERT J.
SMITH; JANET SMITH; JOHNNY
TAYLOR SMITH; LOLA DEANE
SMITH; SHELBY JEAN SMITH,
INDIVIDUALLY; SHELBY JEAN
SMITH AS TRUSTEE OF THE TRUST
AGREEMENT OF CLIFFORD M.
SMITH; AND VICKIE SMITH                    APPELLEES



OPINION
REVERSING AND REMANDING APPEAL NO. 2020-CA-0758-MR
AND AFFIRMING APPEAL NO. 2020-CA-0759-MR[1]

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  The First National Bank of Manchester (First National) brings

Appeal No. 2020-CA-0758-MR from a May 4, 2020, summary judgment and

brings Appeal No. 2020-CA-0759-MR from a May 4, 2020, declaratory judgment

of the Clay Circuit Court.  We reverse and remand Appeal No. 2020-CA-0758-

MR; we affirm Appeal No. 2020-CA-0759-MR.

---

[1] Due to the related parties and subject matter, for judicial economy and expediency, these two appeals have been considered together by the Court.

First National entered into a commercial ground lease with Maurice K. Smith, Delbert J. Smith, Janet Smith, Johnny Taylor Smith, Lola Deane Smith, Clifford M. Smith, Shelby Jean Smith, and Vickie Smith (collectively referred to as the Smiths)[2] on August 9, 1990. First National constructed a branch bank upon the leased real property; however, the branch bank is currently closed.

On December 9, 2015, the Commonwealth of Kentucky, Transportation Cabinet, Department of Highways, (Transportation Cabinet) filed a petition (Action No. 15-CI-00338) in Clay Circuit Court to, *inter alia*, condemn a portion of the real property leased by First National and owned by the Smiths.[3] The Transportation Cabinet named, *inter alios*, both First National and the Smiths as parties.

First National filed answers and asserted its right to just compensation for the condemnation of a portion of the real property. The Smiths also filed an answer and asserted their right to just compensation for the taking of their fee simple interest in the real property.

---

[2] It must be pointed out that Clifford M. Smith subsequently passed away and Shelby Jean Smith as Trustee of the Trust Agreement of Clifford M. Smith was substituted.

[3] Several parcels of real property were condemned, including a portion of real property owned by Maurice K. Smith, Delbert J. Smith, Janet Smith, Johnny Taylor Smith, Lola Deane Smith, Clifford M. Smith, Shelby Jean Smith, and Vickie Smith and leased to the First National Bank of Manchester.

Eventually, by Interlocutory Order and Judgment, the circuit court determined that the Transportation Cabinet possessed the authority to condemn the real property. The court ordered that $87,500 be paid as compensation and be held by the circuit court clerk pending trial.[4]

Thereafter, the Smiths filed a motion for summary judgment upon the issue of apportionment of compensation between First National, as holder of the leasehold, and the Smiths, as holder of the fee simple. Citing to *Commonwealth, Department of Highways v. Sherrod*, 367 S.W.2d 844 (Ky. 1963), the Smiths argued that First National was not entitled to any compensation as holder of the leasehold. The Smiths attached an affidavit of a real estate appraiser, J.W. Grabeel, who opined that the fair market value of the real property subject to the lease was greater than the fair market value of the real property free of the lease. As a result, the Smiths maintained that First National was not entitled to any compensation for the taking of a portion of the real property by the Transportation Cabinet.

First National responded and also cited to *Sherrod*, 367 S.W.2d 844. However, First National maintained that the Smiths' real estate appraiser failed to

---

[4] Although not relevant to this appeal, three commissioners were appointed by the circuit court to determine the fair market value of several parcels of real property sought to be condemned. In their report, the commissioners determined that the fair market value of the real property taken was $80,000 and the fair rental value of temporary easements was $7,500, for a total of $87,500. However, exceptions to the amount of compensation were filed to the report, and the matter of just compensation was set for jury trial.

supply specific fair market values of the real property; rather, the appraiser improperly concluded that the fair market value of the real property with the lease exceeded the fair market value of the real property without the lease. Additionally, First National argued that the appraisal of the real property was premature.

While the condemnation action was pending, on August 2, 2017, First National filed a Petition for Declaration of Rights against the Smiths in the Clay Circuit Court (Action No. 17-CI-00236). In the petition, First National asserted that it and the Smiths disputed the terms of the 1990 lease. First National claimed that the 1990 lease was for successive five-year terms with each term being renewable at the sole discretion of First National. First National also stated that it did not intend to renew the lease at the end of the current five-year terms ending on September 8, 2020. First National argues that it had the option to renew the five-year terms for a period of 100 years. In response, as set forth in their answer, the Smiths stated that the lease was a long-term lease for an initial term of 100 years, rather than successive five-year terms.

First National then filed a Motion for Expediated Determination. Therein, First National maintained that the sole issue for determination involved the interpretation of the 1990 lease, which presented a legal issue for the court. First National stated that there was "no necessity of the development of proof." Motion at 2. First National argued that the 1990 lease clearly provided for twenty

five-year terms, for a total of 100 years, and each term was renewed by First National's continued payment of rent.

The Smiths filed a response and argued that First National's interpretation of the 1990 lease was erroneous. The Smiths maintained that the term of the 1990 lease was for 100 years, not five years, and there was an option to extend the lease for another 100-year term. The Smiths argued the five-year periods provided for in the lease were merely included to set forth the increased amount of monthly lease payments due during each five-year period.

Ultimately, in a May 4, 2020, Declaration of Rights judgment in Action No. 17-CI-00236, the circuit court concluded that the 1990 lease was a long-term lease for an initial term of 100 years, with the option to be extended for another 100 years. The circuit court determined that "the breakdown . . . into segments of five years was for the purpose of periodic rental [payments]." May 4, 2020, Judgment at 7.

Also, in a May 4, 2020, summary judgment in Action No. 15-CI-00338, the circuit court determined that First National was not entitled to compensation for the taking of a portion of the real property subject to the leasehold under the rule of *Sherrod*, 367 S.W.2d 844. Thus, the circuit court concluded that the Smiths, as owners of the fee simple title, were entitled to all compensation flowing from the condemnation of the real property. The circuit

-6-

court included complete Kentucky Rules of Civil Procedure (CR) 54.02 language and these appeals followed.

As noted, First National filed Appeal No. 2020-CA-0758-MR from the May 4, 2020, summary judgment rendered in Action No. 15-CI-00338 and filed Appeal No. 2020-CA-0759-MR from the May 4, 2020, declaratory judgment rendered in Action No. 17-CI-00236. To aid in disposition of these appeals, we shall initially address Appeal No. 2020-CA-0759-MR and then Appeal No. 2020-CA-0758-MR.

## APPEAL NO. 2020-CA-0759-MR

First National contends that the circuit court erroneously interpreted the 1990 lease. First National asserts that the term of the 1990 lease is for five years and that the five-year term is renewable at the discretion of First National for a total of twenty terms or 100 years. Thereafter, First National maintains that it may extend the lease for another 100 years. According to First National, each five-year term was renewed by First National's act of paying monthly rent and of continued possession upon expiration of the prior five-year term. First National believes the circuit court overly emphasized the legal distinction between the terms renew and extend and other provisions of the lease tending to demonstrate that the parties intended a long-term lease.

To begin, this case is a declaratory judgment action filed pursuant to Kentucky Revised Statutes (KRS) 418.040 *et seq.* No discovery was taken and the action was heard by the court upon motion by First National. KRS 418.050. The declaratory judgment was thereupon appealed pursuant to KRS 418.060.

For purposes of this appeal, we have treated the declaratory judgment as one for summary judgment. *Godman v. City of Fort Wright*, 234 S.W.3d 362, 368 (Ky. App. 2007). We review a grant of summary judgment *de novo* because only legal questions and the existence, or nonexistence, of material facts are considered. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Additionally, the interpretation or construction of a contract, including questions regarding ambiguity, is also a question of law and subject to *de novo* review. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003); *see also Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

Thus, our review in this case is limited to the 1990 lease and the terms set forth therein. Unless there is an ambiguity in the lease terms, the parties' intentions must be determined from the four corners of the lease without resort to any extrinsic evidence. *Cantrell*, 94 S.W.3d at 385. If the lease is not ambiguous, we will strictly enforce its terms, assigning them their ordinary meaning. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010). And, Kentucky courts have recognized that in interpreting the construction of a lease, the interpretation

must be construed more strongly against the party who prepared the lease.  *Boyd v. Phillips Petroleum Co.*, 418 S.W.2d 736, 738 (Ky. 1966), *as modified on denial of reh'g* (Apr. 28, 1967).  In this case, the lease was drafted by First National's lawyer.

The 1990 lease, in relevant part, read as follows:

> NOW FOR AND IN THE CONSIDERATION of the premises and the payment of 1200.00 Dollars cash in hand paid the Lessors do hereby grant and convey to the Lessee the above described property.  The terms of the lease and rent payments for this lease on the above described property are as follows:
>
> (1)     Beginning on or before the 9 day of September, 1990, and each consecutive month thereafter for sixty (60) consecutive months, rent shall be due in the amount of One Thousand Two Hundred Dollars ($1,200.00) per month;
>
> (2)     After the first Five (5) years of this lease (the terms set forth in paragraph 1) this lease shall be renewable for an additional term of Five (5) years at the monthly rental of One Thousand Five Hundred Dollars ($1,500.00) per month for each consecutive month in the Five (5) year term.
>
> (3)     After the Five (5) year period set forth in paragraph one (1) and the Five (5) year period set forth in paragraph two (2) this lease shall be renewable for an additional Five (5) year term with monthly rentals in the amount of One Thousand Eight Hundred Dollars ($1,800.00) per month for the Five (5) year term.
>
> (4)     After the three (3) Five (5) year rental terms set forth in paragraphs 1, 2, and 3 above, this lease is renewable for an additional Five (5) year terms [sic] and

rent shall be set by the National Wholesale Price Index effective at the time renewal is due. The parties hereto agree that the rental rate will be set within thirty (30) days of expiration of the prior term. The beginning of the rental rate on the 16th year will be no less than One Thousand Eight Hundred Dollars ($1,800.00) per month and will be adjusted on the 16th year through the 20th year being based on the prior five (5) year average National Wholesale Price Index. Each five (5) year term thereafter shall be computed the same as the third (3rd) five (5) year term.

> Example: Prior years 11, 12, 13, 14 and 15 National Wholesale Price Index is 4% per year so five (5) years would be 20% of $1,800.00 which would be an increase of $360.00 per month for the next five (5) year term.
>
> . . . .

(5)    This lease shall be enforceable for the initial Five (5) year term set forth in paragraph 1, and for at least nineteen (19) subsequent Five (5) terms, unless agreed to otherwise in writing by the parties. The parties hereto agree that Lessee shall have the option to extend the lease for a likewise term of One Hundred (100) years under the same terms and conditions set forth above.

1990 Lease at 1-3.

The circuit court concluded that the lease was not ambiguous. We agree. Viewing the lease as a whole, we believe the parties intended to enter into a long-term lease with a term of 100 years, and the option to extend the term for another 100 years under Section 5. And, while Sections 1-4 speak of five-year terms or periods, these sections merely do so within the confines of setting forth

-10-

correspondingly increased lease payments. So, we conclude the five-year periods in Sections 1-4 were only included to provide a time table in connection with increased lease payments. Although not pivotal to our disposition, we observe that the parties disagree as to the proper definition of the word "renewable" as set forth in Sections 2-4 of the 1990 lease. The term "renew" has a strict legal meaning and requires a "new, formal agreement in writing" to renew the lease. *Lexington Flying Serv. v. Anderson's Ex'r*, 239 S.W.2d 945, 946 (Ky. 1951). However, such a technical definition will not be utilized if the intent of the parties demonstrates a contrary interpretation of the term. *Id.* at 946-47. We believe the term "renewable," as set forth in the lease, should not be given its strict legal meaning, as the whole of the lease illustrates that a new written agreement every five years was not intended by the parties. As set forth above, we interpret these Sections of the lease as merely providing five-year periods for the purpose of increasing lease payments.

In sum, we interpret the 1990 lease as a long-term lease with an initial 100-year term and with an option to extend for another 100 years. The circuit court's granting a declaration of rights in accordance therewith was not reversible error. For the reasons stated, we affirm. Any remaining contentions of error are moot or without merit.

-11-

First National contends that the circuit court erroneously rendered summary judgment determining that it was not entitled to compensation for the partial taking of the leased premises by the Transportation Cabinet. First National agrees with the circuit court that *Sherrod*, 367 S.W.2d 844, controls upon the issue of allocation of compensation between a tenant and landowner in a condemnation action. Nonetheless, First National argues that the circuit court improperly relied upon the expert opinion of Grabeel, as to the fair market value of the leased tract of real property free of the lease and subject to the lease before the condemnation. According to First National, Grabeel's opinion was tainted because he failed to include specific values of the leased tract. Also, First National points out that Grabeel's affidavit of September 25, 2019, was given approximately eight months before the circuit court declared that the 1990 lease was for an initial 100-year term. For these reasons, First National argues that the circuit court erred by relying upon Grabeel's affidavit to render summary judgment.

Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Under CR 56.05, an affidavit submitted in support of or in opposition to a summary judgment "shall set

-12-

forth such facts as would be admissible in evidence." Our review proceeds accordingly.

It is well established that "Sections 13 and 242 of the Kentucky Constitution permit the public condemnation of private property, but only for a valid 'public use,' and only upon prior payment of 'just compensation.'" *Bianchi v. City of Harlan*, 274 S.W.3d 368, 372 (Ky. 2008) (quoting *Sherrod*, 367 S.W.2d at 857)). Just compensation is the difference between the fair market value of the real property before the taking and the fair market value of the remainder of the real property after the taking. KRS 416.660; *Commonwealth v. R.J. Corman Railroad Co./Memphis Line*, 116 S.W.3d 488, 491 (Ky. 2003). In a condemnation action, the valuation of a leasehold and the allocation of compensation between a tenant and a landlord is controlled by *Sherrod*, 367 S.W.2d at 850, which sets forth the following method for determining same:

> Under this method the proof should be directed towards showing, and the instructions should require the jury to find, only the following three values:
>
> A. The fair market value of the leased tract as a whole immediately before the taking, giving consideration to the fact that it has rental value but *evaluating it as if free and clear of the lease*. (This will be factor *A*.)
>
> B. The fair market value of the leased tract as a whole, immediately before the taking, *if sold subject to the existing lease*. (This will be factor *B*.)

C. The fair market value of so much of the leased tract as remains immediately after the taking, giving consideration to the fact that it has rental value but evaluating it as if free and clear of the lease. (This will be factor *C*.) (Of course, if the entire tract is taken by the condemnation, this value will be zero and need not be found by the jury, but for the purpose of the following computations *C* will be considered to be zero.)

After the jury has fixed the foregoing three values the *judge* will compute and apportion the damages as follows:

(1) Subtract *C* from *A*. The result is the total damages payable by the condemnor.

(2) If *B* is the *same* as or *more* than *A*, *ignore B*. In this situation *all* of the damages will go the *landowner*, because the leasehold had no value, by reason of the fact that the existence of the lease has not impaired the market value of the tract.

(3) If *B* is *less* than *A*, subtract *B* from *A*, and then *divide* the difference by *A*. The result will be the *percentage of ownership interest the lessee* is deemed to have had in the leased tract before the condemnation.

(4) *Multiply* the total damages, found under (1) above, by the percentage found under (3) above. The result will be the *lessee's* share of the total damages. Subtracting his share from the total damages will leave the *landowner's* share.

In this case, the Smiths submitted the affidavit of Grabeel, who is a

real estate appraiser. In the affidavit, Grabeel averred, in relevant part:

(5) It is necessary that the parcel described in ATTACHMENT be appraised separately from the remaining property in order to determine the respective

-14-

compensation to the fee owners and the lessee, First National Bank. The remaining property that is the subject of Civil Action No. 2015-CI-338 is owned in fee [simple] by the Smiths with numerous parcels having been leased to business entities other than First National Bank.

(6) I have been asked to render an expert opinion pursuant to the principles of *Commonwealth, Dep't of Highways v. Sherrod*, 367 S.W.2d 844 (Ky. 1963). As set forth in *Sherrod* the method determining compensation in cases of condemnation of property that is under lease requires the determination of these three separate values:

A. The fair market value of the leased tract as a whole immediately before the taking, giving consideration to the fact that it has rental value but evaluating it as if free and clear of the lease. (This will be factor A.)

B. The fair market value of the leased tract as a whole, immediately before the taking, if sold subject to the existing lease. (This will be factor B.)

C. The fair market value of so much of the leased tract as remains immediately after the taking, giving consideration to the fact that it has rental value but evaluating it as if free and clear of the lease. (This will be factor C.)

If the fair market value of the leased tract as a whole immediately before the taking, if sold subject to the existing lease (Factor B), exceeds the fair market value of the leased tract as a whole immediately before the taking, giving consideration that it has a rental value but evaluating it as if free and clear of the lease (Factor A), then all damages go to the landowner.

-15-

(4) I have been asked to address the issue of whether the fair market value of the leased tract as a whole, immediately before the taking if sold subject to the existing lease (Factor B) exceeds the fair market value of the leased tract as a whole immediately before the taking, giving consideration to the fact that it has rental value but evaluating it as if free and clear of the lease (Factor A). In my expert opinion Factor B exceeds Factor A.

Affidavit of Grabeel at 2-3.

In his affidavit, Grabeel failed to set forth the specific fair market value of the tract of real property without the 1990 lease and with the 1990 lease before the taking. Rather, Grabeel simply opined that "Factor B exceeds Factor A" per *Sherrod*, 367 S.W.2d 844. However, as plainly set forth in *Sherrod*, 367 S.W.2d at 850, the determination of whether factor B exceeds factor A is for the court to compute only after the fair market values as to factor A and factor B are established. So, an expert witness may not properly express an opinion upon whether factor B exceeds factor A; rather, an expert witness may properly testify as to the fair market values of the real property with and without a lease before the taking. This Grabeel failed to do.

We conclude that Grabeel improperly opined upon whether the real property was worth more with the lease under *Sherrod*, 367 S.W.2d 844, and Grabeel failed to offer any specific fair market values of the leased real property before the taking per *Sherrod*, 367 S.W.2d 844. Taken together, we do not believe that Grabeel's affidavit is sufficient to support summary judgment in favor of the

Smiths.  *House v. Deutsche Bank National Trust as Trustee for Wamu Series 2007-HE1 Trust*, 624 S.W.3d 736, 744 (Ky. App. 2021) (holding that an affidavit containing inadmissible evidence is insufficient and cannot be considered on a motion for summary judgment).  Therefore, we are of the opinion that the circuit court erroneously rendered summary judgment and thus reverse and remand for additional proceedings thereon.[5]

In summation, we reverse and remand Appeal No. 2020-CA-0758-MR and affirm Appeal No. 2020-CA-0759-MR.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEFS FOR APPELLEE: |
|---|---|
| John P. Brice | Yancey L. White |
| Lexington, Kentucky | Manchester, Kentucky |

---

[5] Our Opinion should not be misconstrued as holding that summary judgment is impossible in a condemnation action.  *Commonwealth v. R.J. Corman Railroad Co./Memphis Line*, 116 S.W.3d 488, 497-98 (Ky. 2003).